Your Honor, this is a, I serve as a bankruptcy trustee in the Northern District of West Virginia, and a principle that I have largely become familiar with is one of adverse domination. It is a situation where the insiders in the corporation loot the corporation, take advantage of it, and as a consequence, the lawsuit that should be- You knew about this in September and sat on it for over a year. Why didn't you file your claim within that year? Judge, I had been asked by the U.S. Trustee's Office to delay pursuing this matter while the status of the case as a whole could be determined. This is perhaps the oddest case I've ever run across, where the person who filed the case then claimed he wasn't authorized to act for the company. We ended up in a dispute before Judge Flatley over who had the right to file the case, and that caused a substantial delay in the case as it got off the blocks. That's absolutely the case. So I believe that that particular problem caused problems for me throughout the case. In fact, it reflects activity by the debtor in this case, which was fraudulent from the get-go. Well, on your domination issue, I think you didn't address it in your brief. I don't think there is much debate about the nature of that doctrine and the idea that if a corporation is controlled by its principles and the principles are involved in the fraud, that there may not be suspension of a statute of limitations. But what I'd like you to address, if you would, is how that reacts to a statute of repose, which I understand this statute has. This statute has two components. It has a four-year period which says that the claim expires, regardless of whether somebody knows it, and then it has a one-year discovery extension from if it wasn't discovered. So the Act itself takes into account the lack of notice by giving an extra one year, but that doesn't change the nature of the statute of repose, and so I'd like you to address why you think a domination theory is relevant at all to a statute of repose. Well, let me start, Judge. There's a couple of unpublished decisions on the Tenth Circuit that do that. Don't worry about any decisions. Just make the argument. I'd like to hear what the argument is. Judge, if the bad guy is in control and the statute of repose starts to run while the bad guy is still in control, you can arguably leak out the entire statute of repose during the bad person's control, and so you leave only a discovery rule for a year, and if you are willing to engage in bad behavior, leak out the statute of repose, I'm pretty comfortable that you can try and confuse the state of affairs. The statute of repose is intended to put to rest all claims that are old. We have statute of repose that are usually longer, but if somebody had committed a wrong 20 years ago with respect to something and no one knew about it, at the end of 20 years on a statute of repose, that ends it regardless of whether anybody knew about it. That's a legislative decision to say the borders established in history are established in history, and they stay that way. We're not going to undo them, and so it seems to me this is a short statute of repose. It's only four years, but they clearly said the claim expires. They didn't say you have to bring it within so much time. They just said the claim expires whether you know about it or not, and in order to cover the type of situation you're talking about, domination, they give you a year, but that's the discovery period, and it might affect it during that year, but of course during this year the trustee did have knowledge of the fraud. Well, the difficulty with applying the adverse domination to the statute of limitations as a whole and to its counterpart, the statute of repose, is exactly the problem that I'm talking about. It's how nefarious, how difficult, how complicated are these situations going to be, and so to me that's the problem that exists, and that's why I think the Tenth Circuit did what it did in the Dockstader cases. It basically said we're not concerned about this. It did so. Is that the statute of repose? Yes, sir, and it's exactly the same case that's here. Did they address the statute of repose? They seem to do so, Judge. Tell me what you understand the difference between a statute of limitations and a statute of repose. Ordinarily a statute of limitations, the judge says, if you don't bring a claim within a fixed period of time, then the statute runs out. It can be extended and is typically extended for discovery issues in some contexts. Statute of repose is designed to be a statute that says we're done, we're never looking at this again. I think you largely described it to me, and I largely agree with you. I think that the single exception that exists is the statute of repose problem, I'm sorry, is the adverse domination issue where you have this nefarious activity by people who are in breach of their duty of loyalty. Except that doctrine didn't apply during the period of the one-year extension. During the one-year extension, not only was the period subject to discovery, but the record in this case indicates that the trustee had actual knowledge of the claim. And the statute, well, it indicated, according to the district court in the September filing, it's all laid out, the whole fraud, and more than a year later the claim was filed. Judge, it took me a substantial period of time to find out who was running this business. I think that if you look at the contracts at issue, you'll find that there's a dispute between Mr. Saud, who said that he had sold the business and was no longer connected to it, and ultimately Ms. Daniels supported that to some degree. And ultimately, I think I have the only case in America where we never knew who filed this case or whether the person who filed this case did so lawfully. What we did find out was that the person who went to dismiss this case didn't have the authority to do so, and that for a lot of reasons there was a stopple against dismissal. That's a very bizarre set of facts, Judge. When I tell you that that process delayed me. You have to be timely within both the statute of limitations and a statute of repose to bring your case. If either one bars you, you're time barred, and there are problems with both of them. But I think Judge Niemeyer is right that the statute of repose is pretty cut and dried, and the purpose of a statute of repose is even stronger than the purpose behind a statute of limitations. A statute of repose says, in essence, no matter what, this claim is put to rest. And, of course, there are problems with equitably tolling even a statute of limitations because it really risks undermining legislative intent. But it's far rarer, far more rare to see a statute of repose quote, equitably unquote tolled. That's a rare bird. And because, you know, the statutes of limitations want to bring finality to potential claims. Statutes of repose want to bring super finality to claims. And it seems to me that this fraudulent transaction that you're claiming occurred, and that may well have occurred, may well have. But that occurred in 2005, and the complaint wasn't filed until October 2011. And why isn't that just, you know, even without getting into the statute of limitations, why isn't that just the end of the story? Well, Dr. Sode lied from 2005 to 2009. Ultimately, I didn't exist until 2009 when the bankruptcy case was filed. When I started to investigate what was going on, I was still being buffaloed about who's the owner of this business. And ultimately, we started to take action to try and protect the creditors of this company who had been defrauded throughout the period. But there could always be intervening events of the kind that you're talking about between the date of the transaction and the date the complaint was filed. There could always be intervening events that could be brought forward to say this is excusable to file outside of the statute of repose. But again, unless the legislature sort of lays the groundwork for that kind of exception, I don't know how we can just create one. Well, let me go back, Judge, and talk to you about this legislation. The Fraudulent Transfer Act is a uniform statute. This is the same statute that exists in Utah, and so the legislative history is the same. So the 10th Circuit decisions that actually address this issue I think are particularly relevant. While we are talking about a Utah statute, we're clearly talking about a Western Union statute. We're talking about a uniform statute, and I think that having found those cases and presented them to you, while they are unpublished, they are directly on this issue of repose. Why haven't you waived this argument? It looks like below on that when Judge Keeley talked to you about it, it said now in light of that the question of adverse domination is still in the case, and your lawyer said we don't need it, we don't need it now. Hasn't that adverse domination been waived at that Rule 50 hearing? I believe we were addressing something else at that period of time, Judge. Judge Keeley had introduced adverse domination. Her next statement was, so there's no adverse domination. On the claim that was left in the case. She had ruled out a number of claims in the case by that point in time during the Rule 50 hearing. Judge Keeley presided over the criminal case where the government pursued an alter ego theory, and I think that that was strongly in her mind about this case, and she felt that somehow I was an interloper trying to upset some kind of a criminal case, perhaps. But I know that she had very strong views about this case, and I think that they were largely dominated because of the fact that she had dealt with that originally. I've specifically addressed the language that she talked about in the reply brief, Judge, and so I think that I've largely handled that. But I think that she left other issues in the case. She took out the conspiracy issues, which I found, quite honestly, we found surprising at the Rule 50 hearing. If there's another question, I'll be happy to address that. Anything else in the case you'd like me to get? I'll be happy to deal with you on rebuttal. Thank you, sir. Let me ask you one question. The second $100,000 payment, when was that made? It would have been made sometime in 2007. It's a little hard to tell with the proof I have. It has to deal with the tax returns that work through the case. It could have been anywhere during the year. Did anybody pursue the checks or the bank records or anything? Not with that level of specificity. We did not perceive that this issue was in the case as we were getting ready for trial. No, sir. Well, you mean, I mean, it's important because if it were made after September, the $100,000 might be construed to be a transfer. And, Judge, if I thought this issue was in this case before Judge Keeley had ruled on it, I would have had you the checks. But I didn't think this issue was in the case until we got to a place where we were getting ready for trial. What is your position as to about what you claim this was fraudulent and the district court seemed to focus on when the obligation was made and didn't address when the transfer was made? There were three transfers, right? That's correct. $100,000, $100,000, and $50,000. Yes, sir. $50,000 was within the time period. Yes, sir. $100,000 might be, but you didn't provide a record on that. I don't know what the record shows. The record is insufficient, and so the ruling has to be against me if she was correct on that money. I concede that to be true. Because it's ambiguity. You're right, Judge. It could be, but I have a burden of proof. And so I clearly did not carry the burden of proof if she's correct that the 2005 transfer dominated what happens later. The reason she went into this issue has to do with the decision of this court in La Rosa. In La Rosa, there was an obligation tied to a pledge. I understand, but the statute uses both words. Yes. It uses either an obligation or a transfer. Isn't that correct? Yes, it does. And the transfer of $50,000 from the corporation to Mr. Saud was within the limitations period. Yes, sir. The transfer of the $100,000 would be if it was after September. And we are in agreement on that fact, Judge. I did not have the proof at trial. As I have the burden of proof, I cannot argue to you. Was it in the discovery of the corporate records? Not in that sense, Judge, because we didn't think that that issue was relevant at the time. We just didn't. So there is a failure, and that failure is mine, and I suffer the consequences, both in the district court and here. Thank you. Mr. Harris? May it please the Court, I'm Paul Harris representing the appellee, the defendant below. We maintain that the district court properly relied upon the plain language of the West Virginia statute in this Court's unpublished decision in La Rosa in making the rulings at issue in what was really a simple trial. La Rosa involved an obligation. The majority opinion rested on the notion an obligation was made. Judge Keeley relied on that. The obligation was made, and that was clearly more than four years. It was made, what, 2005? It was actually 2006. I know the record says 2005. The statute, however, uses the disjunctive. It says a transfer made or an obligation incurred. So the obligation was incurred clearly then. How do you address the $50,000 which was transferred from the corporation to Mr. Saud within the limitations period? Judge Neumeier, I read your dissent when I saw you on the panel. I read it again, and I would take the position that your dissent entirely fits within the undisputed facts below and the theory of the case as articulated by the trustee because the trustee says that the fraudulent transfer, and I think that's at least the way I read your dissent. You said you can focus on the subsequent transfers because they in and of themselves were fraudulent, the drawdowns on the line of credit in La Rosa. The trustee's position in this case, in theory in this case, was that the fraudulent transaction all started in 2006. I know his brief says 2005. The record will show it's March 31, 2006, April 1, 2006, were the date of these fraudulent documents which purportedly sold AGS, Inc. to this physician's assistant, Georgia Daniel, who's no longer in the case. So that's been the trustee's position throughout this trial. It wasn't the subsequent payment of $100, $100, and $250, which they attempted to get in and Judge Keeley ruled $50 out. So if you take your dissent and you say, okay, the statute is broad enough to say you just don't look at the instrument from which the drawdowns occurred, but you look at fraudulent transactions, then we're still stuck with 2006. That's our position. That's factually the trustee's position, at least what he had at trial. And, in fact, if you look at his brief, it goes to great length to say these 2006 The date of the transaction was 2005. 2005, Judge Wilkinson, was the date in which Dr. Saud did a deal with the federal government to be debarred from billing Medicare and Medicaid. And then after 2005, in the spring of 2006, and those documents are attached to the amended complaint, you'll see, I think it's March 31, 2006, April 1, 2006. But regardless, Judge Wilkinson, the statute of repos and the plain language of the statute knocks it out. And, Judge Neumeier, your dissent factually fits within factually the trustee's theory of the case such that he cannot recover. Well, there's a question here about whether the operative date ought to be the transaction itself or the sale itself or, I mean, a lot of these transactions have payment schedules that stretch out for quite a while. Now, the question I have is, I mean, there can be a sale and the purchaser could make a $50,000 payment one year and a $50,000 payment. In other words, it can be an installment payment in the sale. But does that move back the statute of repos or is it the actual date that the sale documents and the schedule of payment is agreed upon? We maintain, Judge Wilkinson, it must be the date of the original transaction and not the drawdowns after. Okay, and I hear you and I understand that's your view. So why do you say that? Because I think the West Virginia legislature in drafting this statute provided for it in the plain language of the statute when you look at Which are we talking about now, limitations or repos? Well, I think we can talk about both. But I do get your point, or I agree with your point, Judge Wilkinson, that the statute of repos sort of trumps it all. But Section 40A-1A-6 specifically provides for when the transfer or the obligation occurs. And so we think the West Virginia legislature took out the argument that Mr. Sheehan makes in this case. The difficulty is the payments stretch out. If the payments stretch out, you can really undercut the statute of repos because it's the transaction that is fraudulent. And the transaction, I suppose, is the event that puts you on notice. And that is the significant event. And, in fact, the schedule of payments are far more likely than not to be set forth in the transactional documents. And so, I mean, it's more than ministerial and everything, but you run the risk if you let the payments set the terms of the statute of repos of just undercutting the legislative intent, I think. Well, I have two points with regard to your question, Judge Wilkinson, which is, first, we must assume that the West Virginia legislature, in adopting the statute the way it did with its plain language, took that into consideration as a policy matter. And the second point is, when you look at the majority opinion in La Rosa, with all due respect to Judge Neumeier and his dissent, in that opinion, the majority goes through the analysis to say, why was the statute changed and why did this occur with respect to saying subsequent drawdowns are not within the time frame? The majority goes back and looks at the amendment to this uniform statute, and it appears as though there was an amendment that dealt with a Second Circuit case. I think Rubin was the name. I don't recall for certain. But it's in the La Rosa opinion. And so after that case from the Second Circuit, where it was determined, no, the statute of limitations or repos starts to calculate from drawdown dates, then the uniform statute was amended. Well, let me ask you, how do you accommodate the language of the repos statute, which says within four years after the transfer was made, or the obligation was incurred? In other words, in the disjunctive. And the transfer may never have been made. You could still sue on the obligation. But the legislature seemed to suggest that the transfer is when you can no longer, it has to be complete, and the transfer, that goes back to Section 6, the transfer with respect to non-real property is when it's in the other person's hands, basically. The transfer of the $50,000 was made within the statute of repos. Except that the language of Section 6 says, if the obligation is evidenced by a writing. And so you could argue that the $50,000 check is the writing, but I maintain, we maintain, that the writing from which all of that came from is the 2006 alleged sale, the one paragraph document attached to the trustee to his amended complaint. And it all comes from that. And so logically, if we apply it to the old automobile accident case, where an incident happens, and then someone continues to incur medical bills or subsequent injuries, the law has never held, under those set of circumstances, that the statute runs from those subsequent effects of the automobile accident, at least in West Virginia. The law has held, no, the operative date is when the automobile accident happened, and subsequent effects to the injured party do not save the statute of limitations. Well, that's the significant thing, is the transaction itself. Yes. And we think the legislature must have taken that into account. Statutes of repose can be draconian things, and we understand that. But they did have that one-year, I call it, savings clause, which they labeled a statute of limitations. And then under West Virginia law, we have the discovery rule, and as Justice Neely of our West Virginia Supreme Court said in that Merrim case, that the adverse domination theory is a subspecies of the statute of limitations. But, Judge Neumeyer, we agree with you that you don't get to that adverse domination theory under the facts of this case, because it was undisputed. The trustee knew and identified for the bankruptcy court and filed a pleading, which was our only exhibit in the case, by the defense. We had no witnesses. We filed one exhibit, which was that pleading that the trustee filed in September of 2010, recognizing that he was appointed back in the spring of 2009. And so by September of 2010, he identified for the bankruptcy court that he has these valuable causes of action related to fraudulent and preferential transfers. That's on page 337 of the appendix where Judge Keeley reads that into the record. And that's the reason why Judge Keeley didn't let in or let go to the jury all of these other transactions, the $100, $150, and then there were some other transactions. She only let go to the jury a transaction which, ironically enough, happened in 2005 related to the sale of a piece of land. And we argued, well, the trustee should have known about that because there was a deed filed. And when a deed is filed, the world is deemed to know about a deed. But ironically enough, Judge Keeley said, no, that 2005 transaction fits within the one-year savings clause of the West Virginia statute, saying it was a statute of limitations issue, because the jury should determine whether the trustee could have reasonably discovered the deed. And despite the fact that my defendant wasn't even at the council table when he was incarcerated because of the earlier criminal proceeding, and despite the fact his many felonies came into the record, the West Virginia jury looked at that and, we think, answered the statute of limitations correctly. So if laypeople, in that case eight persons on our West Virginia jury, can understand the facts related to this statute of limitations issue, then we think, really, there isn't an issue that is worthy of a published opinion in this case reversing the district court. When you read the transcript of the Rule 50 hearing, you see Judge Keeley going to great pains with the plaintiff's counsel to say, for example, what evidence is there of adverse domination? You know, where is the evidence so I can get that, so I can preserve that for you? And the plaintiff's counsel couldn't articulate that. And so that's why Judge Keeley said, and the statement Judge Norton, as you pulled out of the record, where the plaintiff's counsel said, well, that's no longer in the case. Now, to be fair to Mr. Sheehan, that did come after Judge Keeley made her ruling that certain things weren't coming in. But nonetheless, in order to preserve the adverse domination issue for appeal, I think any trial lawyer would have said, no, Judge, we want to preserve that issue. The thing that makes the case a little bit difficult for people, I suppose, is that what happened here was shady, and the individual has lost his medical license, and he's been the subject of a criminal conviction. And so there's a temptation to say, well, let's slam it with a civil judgment as well. But the problem I think Judge Keeley identified is that you have to not go too much China in West Virginia law to get there. And in statutes of repose and statutes of limitations, it's one of the prices we pay for them, for repose and finality, is that we cut off some claims that conceivably could be meritorious, and we let some people who are less than admirable escape the reach of the law. But it's a tradeoff, and the legislature is the one to make that tradeoff. And the problem I think Judge Keeley said is that this really is a hard case in bad law because to get to the result that instinctively we may want to reach and slam this guy, you just have to really begin to erode and undercut what I think and what my good colleague Judge Niemeyer identified as the fairly absolute nature of this statute of repose and what actually the West Virginia legislature sought to accomplish. Yes, exactly, Judge Wilkinson. And if the statute needs changed, it's for the voters in West Virginia to elect new people to change the statute because it's plain. With all due respect, Judge Niemeyer, I understand your position. And I think the final issue in the case, it's kind of hanging out there, was what Mr. Sheehan mentioned before he sat down, which was the issue involving civil conspiracy. It was in count four of the amended complaint. And procedurally what happened is there were other defendants in the case. Those other defendants filed a summary judgment motion as to count four, saying civil conspiracy isn't a standalone tort and you haven't pled it properly. And so Judge Keeley, in ruling with respect to another defendant, who eventually got out of the case completely, said, well, count four civil conspiracy isn't a standalone tort in West Virginia, and the trustee hasn't pled it properly in the complaint, so therefore it's out. And so then on behalf of my client, I took that issue, and then Judge Keeley made the same ruling with respect to that. So I know the trustee says, well, he should have gotten the civil conspiracy issue to the jury, and Judge Keeley shouldn't have ruled that out. But the point is, as Judge Keeley- Let me ask you, if there were such a thing, and I think it's a highly debatable thing because of the nature of the remedy and the nature of the statute, which is basically to return the transfer back to the transferor. But even if he could allege that and pursue that, does that help him? It does not, Judge Neumeier, because of the undisputed fact of his September 10 filing. So it's still a limitations question. It's still a limitations question. And to be perfectly candid, Judge Keeley gave the trustee every reasonable benefit within the four corners of the law that he could have gotten under this statute because he got to go to the jury on the $460,000 deed. But I have to turn to one point here. You said the whole basis for tolling this and these different statutes and the like was this theory of adverse domination. And you said, no, as a matter of law, there wasn't sufficient evidence to show adverse domination in the case. Why is that? Why do you say there was no adverse domination? As Judge Keeley, for pages in the transcript on the Rule 50 motion, goes through it. And that issue may be waived. But the reason Judge Norton suggested it could be waived. But I wanted to ask you. There was one witness, Judge Wilkinson, and that was Mr. Sheehan, the trustee. Our defense was designed to streamline the defense to make it simple for the jury. We put on no witnesses. They put on no further witnesses. Except they did read a little bit from deposition transcripts. There was no testimony as to who controlled AGS up until its bankruptcy filing in May of 2009. And the adverse domination theory. But didn't it have to either be Saud or Gloria Daniels or whatever her name was? Georgia Daniels? Georgia Daniels. Well, but there were other people involved. Blackholders? No, there were other officers or people that worked there. It's a logical conclusion to say it would have been either of them. But that wouldn't rest as to my client. Were there other officers identified? No. There were not as far as I can tell. Those two were the only possibilities. Okay. But she was let out of the case, Ms. Daniels. And the evidence was. Except she was part of the fraudulent transaction. It seems to me, if the doctrine were applicable, I don't think there's a failure to show that it was controlled. That the people who participated in this fraudulent transfer, they were both the officers and the directors. They were the only people that could control the corporation. Fair enough, Judge Neumeier. So then look at the time frame. The Chapter 7 bankruptcy petition was filed in May of 2009. I understand your limitations. I'm trying to carry on a little bit further Judge Wilkinson's question as to whether there was evidence. And it seemed to me that if the doctrine were applicable, it looked to me it's not much of a stretch to say that it was dominated by Daniels and Saud. I think under these circumstances, Judge Neumeier, you would have had to have had a document or a witness testify to that. I think it's too far of an inference. They just didn't put any evidence on it. Right. Is this a case of no bad deed goes unrewarded? Well, except let me just say this, Judge Norton. Dr. Saud was convicted, lost his license, was fined and imprisoned. And the fines are enormous. And the trustee benefits from that as well. So we just don't want him to get the second bite at the apple. Thank you.  Mr. Sheehan. I've attempted to write as good a brief as I can. And I can respect that the Court's opportunity to look at the record is more limited given your other duties. But in this case, these two pages represent two contracts. It's page 62 and 3, I think, of the appendix. And the difficulty really is when we start talking about a schedule of payments and a whole list of things, those things aren't true. This document says the corporation will pay $1 million, and that's it. And so then we're on they loot the company to get the $250,000 that was paid going forward. In that circumstance, I don't find anything in La Rosa that makes any sense in terms of backdating the or moving back the finding the transaction date to be the controlling date as opposed to the transfers which occur later. And that's probably a small issue. It's about the $50,000 in 2008 if we're getting there. But that's how I see this particular deal. In La Rosa, there was a schedule of payments that were terms of the contract. I think that's Judge Wilkinson's point about how you can set that all out. Here, that's not true. And so to me, that's the factual issue. It seems to me that you've conceded that Judge Keeley's ruling that you didn't comply with Rule 9 on the fraud conspiracy case was accurate. You didn't do what, where, when. There wasn't any of that under Rule 9. I mean, it's a woeful failure to plead that cause of action, isn't it? I mean, you agree with that in a footnote. Judge Keeley said that. I agree that's true, but I don't think that it's a pleading standard. Mr. Harris didn't raise that during the case, Judge, so I think that he waived it and that my pleading is adequate to say this is a conspiracy. Mr. Harris and I engaged in a lot of informal discussion in this case. Our offices are across the street. We do a lot of business, and so I think he understood my case. His larger concerns, he defended the criminal case, were there. Speaking for the District Judge's Union, whatever you all discuss across the street is really irrelevant to the analysis we have to do under Rule 9. Well, but you don't have to do a Rule 9 issue unless somebody brings it up. Nobody brought it up, so I found it to be judicial activism, quite honestly, by Judge Keeley to try to get there. We'd set forth, I thought, a fairly reasonable case, and everybody understood what we were talking about. So there was no motion to dismiss for Rule 9 issues. If there were, I could plead out the forever. So I appreciate the critique, Judge, but I don't think that it's founded in this particular case. Judge Niemeyer, you asked a question about civil conspiracy, and the answer is if this is a civil conspiracy, then we know it started. The question is, when did it end? And the way you end a conspiracy traditionally is somebody goes to the authorities or somebody disavows the finality of what we're doing. Neither of those things happen here. If this is a civil conspiracy, if it's properly pled, if I get to move forward on that, then I don't have a statute of limitations problem at all because there is no proof that this ever came to an end. And so that is, in fact, an important issue for me in terms of what's going on in this particular case. With that, I think I'll wrap up. I'll simply try and stand on the Tenth Circuit's opinions because I think they do address fairly thoroughly the issue about statute of repose and the idea of adverse domination. Thank you very much.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, David C. Norton